(53 Misc. Rep. 152.)

HILTON v. SOWENFELD et al.

(Supreme Court, Special Term, New York County. February, 1907).

1. TRUSTS—TRUSTEES—POWER OF SALE—REAL ESTATE—POWER UNDER WILL—EXECUTION.

Where testator devised his real estate to his executors and executrix, who was his wife, in trust to apply the net income to the support of his wife, and authorized his executors and executrix, with the wife's consent, to sell and convey his real estate, and required that such consent be set forth and appear before any sale should be valid, and declared that no sale should be valid without her signature to the conveyance and acknowledgment of the execution of the same, as executrix, the power of sale could not be exercised by the wife alone, she being the only one to qualify, and a title depending upon her attempted exercise of such power was not a marketable title.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 345–348.]

2. VENDOR AND PURCHASER—MARKETABLE TITLE.
    Where testator devised his real estate to his executors and executrix,
    who was his wife, in trust to apply the net income to the support of
    his wife, and authorized his executors and executrix, with the wife's con-
    sent, to sell and convey his real estate, and required that such consent
    be set forth and appear before any sale should be valid, and declared
    that no sale should be valid without her signature to the conveyance and
    acknowledgment of the execution of the same, as executrix, a deed from
    the remaindermen could not make marketable a title based upon the
    wife's attempted exercise of the power of sale alone, since her interest
    as beneficiary was inalienable, and would not pass by her deed, as ex-
    ecutrix, or otherwise.

Action by Frederick M. Hilton, as trustee, against Pincus Sowen-
feld and others to compel specific performance of a contract for the sale
of real estate. Judgment for defendants.

Dittenhoefer, Gerber & James, for plaintiff.

Arnstein & Levy, for defendants.

McCALL, J. In his lifetime one Thomas F. Carhart acquired by
purchase the premises known as No. 68 Spring street, in this city.
He subsequently died seised of the fee to these premises, and left a
will under and by the terms of which he named Marie L. Carhart, Ed-
mund H. Carhart, and John B. Van Wagenen as executors and trus-
tees. These three representatives of decedent's estate subsequently
acquired by purchase the title to the adjacent piece known as No. 70
Spring street, and thereafter two of said trustees filed their accounts
and were allowed to resign, and a decree was entered releasing them
as such executors and trustees. Frederick M. Hilton was appointed
to succeed Edmund H. Carhart, and some time after the remaining
one of the original three was removed, leaving Hilton as the sole
acting executor and trustee. In such capacity, and on the 6th day of
September, 1905, he entered into a contract for the sale of both above-
mentioned properties with the defendants herein; title to close on the
6th day of December, 1905. By a series of adjournments mutually
agreed upon, the closing of title was postponed until the 20th day of
December, 1905, upon which date, at a time and place fixed, the plain-
tiff tendered his deed and the defendants refused to accept same or
complete their contract, asserting that the title offered was unmarket-
able and the cloud on or the defect in title affected only the premises
known as No. 70 Spring street. This purchase was made by the
plaintiff's predecessors in the trust, and was an asset of the estate
when he began the performance of his duties. The history of the title
to this particular piece prior to its vesting in the estate of plaintiff's
decedent is as follows: One George L. Osborn in his lifetime was
the owner. He died in 1876, leaving, him surviving, his widow and
the four children named in his will, all of whom are living to-day, and
Charles, the son, is the only one married, but there is no issue of such
marriage. He also left a last will and testament, upon which, in so
far as the issues of this litigation are concerned, the following extracts
therefrom have a bearing:

"Item. I give, devise and bequeath unto my executors and executrix here-
inafter named all my estate, both real and personal, of every nature and kind,

that is not hereinbefore nor hereafter specifically bequeathed in trust, to receive the rents, issues and profits thereof, and the same to pay over to my said wife, Sarah Esther Osborn, as the same may be received after first deducting from the same all legal charges, and I authorize and empower my said executors and executrix, with the written consent of my said wife,' Esther Osborn, to sell, convey, transfer or mortgage any or all of my real or personal estate, and with the like written consent of my said wife to reinvest the proceeds as they in their best judgment may see fit, and again in like manner to alter or change any and all of such investments and the rents, issues and profits of such new investments, in like manner to pay over to my said wife, Sarah Esther Osborn, during the term of her natural life; and I hereby declare that by this item I intend, first, that it shall be in lieu of dower, right of dower or any other claim, right, title and interest of my said wife, Sarah Esther Osborn, in and to my estate or any part thereof, and her acceptance of the income of my estate as hereinbefore named or her acting as my executrix as hereinafter provided shall be a perpetual bar both in law and in equity to any claims made by her on or to the principal of my estate or any part thereof; and, second, I intend that no change shall be made in the investments of the capital of my estate without the written approval of my said wife (she surviving me), to be signified first by her written consent in her individual capacity as my wife, and such consent and approval must be set forth and appear before any sale, transfer or conveyance can or shall become lawful or valid; and, second, no such sale, transfer or conveyance shall or may become lawful or valid without the signature to and acknowledgment of the execution of the same by my said wife, Sarah Esther Osborn, as the executrix of my estate."

"Item. After the decease of my wife, Sarah Esther Osborn, she surviving me, or after my decease, I surviving her, I hereby will and direct that all my estate, excepting such articles as are hereinbefore or hereinafter specifically bequeathed, shall, within one year, or sooner if the same can conveniently be done, be divided into four shares of equal value by my said executors, one of which shares I hereby give, devise and bequeath unto my daughter Helen Osborn, one of which said shares I give, devise and bequeath unto my said daughter Caroline Elizabeth Osborn, one of which shares I give, devise and bequeath unto my daughter Anna Jarvis Osborn, and the remaining share I give, devise and bequeath unto my son, Charles Osborn."

"Item. If any of my said children should die before the age of 21 years and leaving no legal issue, then I will and direct that her or his share shall be equally divided among the remainder of my said children or the legal issue of any or all of the same."

"Item. I will and direct that the distribution of my estate among my children in the manner hereinbefore stated shall be by lot, each of my said children or the legal issue of such being entitled to one equal one-fourth share of, in and to the same. But in case the said distribution by lot shall be refused by one or more of my said children or by all of the legal issue of one or more of the same, then I will and direct that my executors or their legal successors shall sell and dispose of all my estate at public auction, and from the proceeds thereof I give, devise and bequeath unto my said children, Helen Osborn, Caroline Elizabeth Osborn, Anna Jarvis Osborn and. Charles Osborn, or the legal issue of any or all of the same, one-fourth of the proceeds of the sale of the said estate after deducting the reasonable costs and expenses of such sale."

"Item. In case my wife, Sarah Esther Osborn, should survive me and should also survive all of my said children, and should also survive the legal issue of any and all of my said children, then after my death and after the death of all of my said children, and after the death of all of the legal issue of any and all of my said children, and not before, I give, devise, and bequeath unto my said wife, Sarah Esther Osborn, absolutely, in her own right, all my estate, both real and personal, of every nature and kind whatsoever."

The testator, by his will, also appointed his brother, Charles F. Osborn, his friend, Stephen Van Rensselaer Cruger, as executors, and

his wife, Sarah Esther Osborn, executrix, and also trustees of the trust created. Mrs. Osborn alone qualified as executrix and trustee. She, on the 2d day of February, 1883, "as executrix and trustee of the last will and testament of George L. Osborn, deceased," conveyed these premises to the plaintiff's predecessor as "executor and trustee of the last will and testament of Thomas F. Carhart, deceased," the deed reciting that the conveyance was made "by virtue of the power and authority to her given in and by the last will and testament" of George L. Osborn, deceased, and thus whatever title the plaintiff has flowed to the estate he represents through this deed, fortified to such extent as will subsequently appear by a quitclaim deed executed and delivered the same day as the foregoing deed by the widow of George L. Osborn, Sarah E. Osborn, and all of testator's surviving children, to wit, the four named in his will, Helen, Caroline E., Anna J., and Charles, who were all adults of full age. These two links in the chain of title are the subject of the attack which creates the issues involved herein, and are presented in the questions: Was the widow, Sarah E. Osborn, who was the sole beneficiary and the sole trustee to qualify, competent to act as trustee in the execution of duties of the trust, which, by the terms of the will, had originally been conferred on two others beside herself? And, if not, was not her act in attempting to exercise the power incapable of vesting a marketable title?

My judgment is that the case of Haendle v. Stewart, 84 App. Div. 274, 82 N. Y. Supp. 823, applies to the facts of the case at bar, and is decisive thereof. She could not act as she attempted to, and the instrument executed by her did not pass a marketable title. This brings us to consideration of the question of whether or not the execution and delivery of the quitclaim deed in any manner helps the situation, and it must be seen that, no matter what the intent of the parties, their act was ineffectual. There are two distinct legal estates that must be carried to any proposed grantee from the Osborn estate, to wit: First, the legal estate in the trustees for the life of the widow; and, second, the legal estate in the remaindermen. No matter whether that be determined contingent or vested, and without both being transferred legally, the result is the possession by the grantee of an unmarketable asset, if he should essay to transfer a perfect title to the whole. I have concluded that the trustee's act was illegal, and hence that estate never passed, and of itself this would be sufficient to refuse the decree asked for; but there are other features about this title that, even were the trustee's act a valid one, would cause considerable hesitancy in decreeing that defendant should take the interest these instruments purport to convey. By this quitclaim deed the beneficiary sought to assign her individual interest in the first estate, notwithstanding the positive inhibition to be found in the Revised Statutes, about which, in its rigorous and unbending application, our courts have said "neither court nor beneficiary can deal with it." Noyes v. Blakeman, 6 N. Y. 567; Metcalfe v. Union Trust Co., 181 N. Y. 39, 73 N. E. 498.

And, finally, I am not free from doubt on the question of these remaindermen's right to transfer. I confess I have been quite sorely perplexed over the proposition offered, with my inclination so strongly

against the taking of a title such as is proffered by the quitclaim instrument, that, were it the only point upon which the rejection of title was based, I would refuse decree requested. What are the conditions actually presented? One of these four children named in testator's (Osborn's) will is the son, Charles, whom the proof shows is married. If issue were born of that marriage, and Charles should predecease the widow, Sarah, leaving his issue, him surviving, how would the court resolve the question of intent of testator as expressed in the excerpt of the Osborn will? (found supra). While I confess to much doubt, and while it does not need reiteration to establish the repeatedly announced doctrine of courts to seek a construction consistent with intent that favors absolute vesting, still each will stands by itself and upon its own basis, when put to the test of judicial interpretation, and I am not satisfied with the condition offered on this point, and am inclined to the belief that these children of relator (Osborn) had a remainder subject to being divested, and therefore, until the termination of the trust term, this deed could not pass the fee to the whole remainder in testator's estate.

Judgment for defendants.